The next case for argument is Consolidation Coal Company v. Everett Galusky, and Mr. Mattingly, glad to hear from you. May it please the Court, I am William Mattingly, appearing today on behalf of Consolidation Coal Company. It struck me this morning that my case is not the only one that has an intersection between medical facts and legal determinations. And I guess that gives me a warm, fuzzy feeling, because at times I think I'm the only one that brings these medical questions to the Fourth Circuit. You may be losing that warm, fuzzy feeling in a bit, but let's see how it goes. That's okay. This is a case where it's a matter of regulatory interpretation. How do we interpret the rebuttal provision of the 15-year presumption when the minor clearly is entitled to it, he's presumed totally disabled due to pneumoconiosis, he doesn't have clinical pneumoconiosis, and the question is, has my client provided sufficient evidence to show that he doesn't have legal pneumoconiosis? To answer that question, you really need to go to understand the definition of legal pneumoconiosis, which is any chronic lung disease that is significantly related to or substantially aggravated by coal dust. It is not necessary my client rule out any possibility. Rule out that it's a significant contributing cause, right? Judge Harris, I would like not to use the word rule out. Well, I know. Because administrative law judges attach special significance to that because of the history of rule out in this program. I understand the history of rule out, but it seems to me that the crux, the part that matters of the rule out standard that's not just colloquial, is the part where you have to show that no part of the disability is caused by pneumoconiosis. So it's really the no part standard for our purposes, and I didn't see the ALJ here applying a no part standard. Well, he did, and I will show you where in the decision. But what the ALJ needs to do is not question whether no part of the disease is legal pneumoconiosis, but whether or not the employer has shown by substantial evidence that legal pneumoconiosis is not present. That rule out standard only applies to the second method of rebuttal, which is the causation of disability. If you look at the ALJ's decision on pages 301 and 303 of the Joint Appendix, he discusses both Dr. Beshida and Dr. Begley, and he uses the rule out standard there. No, he's not using the rule out standard. He uses the word rule out, and what he's doing is quoting Dr. Begley, who said rule out in the colloquial sense. Right? He says we can't rule out that his exposure to coal dust could have contributed to his problem. He's not applying the sort of technical version of the rule out standard where what matters is that you have to sort of the degree of causation that has to be disproven. He's just quoting what the guy said in his deposition. And that is the crux of the problem here. The administrative law judge used rule out to require that the employer show absolutely no part of the COPD was due to coal dust exposure. And Dr. Begley and Dr. Beshida and Dr. Rinnall explained this man's impairment is not due to coal dust exposure. The significant causal part, the significant aggravation is not due to an occupational exposure, but is due to years of smoking. And he does not clearly lay out the standard. We didn't have the Bender decision. We didn't have Eppling yet to help the administrative law judge lay out what the standard was to use. I'm just looking at Dr. Begley's deposition, and they ask him, can you rule out a contribution from coal dust as a significant contributing factor? So using the right standard. And he says all I can tell you is that it's attributed primarily to the use of tobacco products. He can't say that coal dust wasn't also a significant contributing factor. And if you look earlier in his deposition, he was asked, what do you think the cause of the disease is? And he said cigarette smoking. But he does believe that that was the primary cause. And I think that that's enough when you look at the definition of legal pneumoconiosis. I think if one thing is the primary cause, then nothing else can be a significant, can have a significant relationship. In Dr. Begley's. What if it's like 51-49? That probably does not meet the standard. But in Dr. Begley's opinion, he's pretty clear that he thinks this is due to smoking, that it's not due to coal dust exposure. And the definition of legal pneumoconiosis requires a significant relationship. And it's clear that that's not the disease process this gentleman has. Judge Morgan in his decision does a good job of summarizing lots of points of the law and what we agree that pneumoconiosis is. On page 294 of the Joint Appendix, wrong page, on page 296 of the Joint Appendix, footnote 22, he notes pneumoconiosis is a progressive and irreversible disease. Once it's present, it doesn't get better. And he ignored that proposition. He summarized the breathing test on page 287. And this was the crux of the resolution by Dr. Wren and Dr. Beshida. They looked at this man's breathing test. They showed a decrement from 2.88 to 1.80 between 19 or between 2010 and 2011. But when Dr. Beshida saw him one more time two months or a month later in 2011, his breathing function went up to 3.31. It almost doubled. And so that led the doctors to explain this isn't a permanent irreversible lung disease. What this gentleman has is COPD with a reversible component. Dr. Beshida called it an asthmatic component. And that's what Judge Morgan failed to consider. No one in this record thought that this was a restrictive lung disease, restriction being you can't get the air into your lungs. This man has an obstructive lung disease. He can't get the air out of his lungs. One of the reasons that Judge Morgan discredited Dr. Beshida, he didn't like what he had to say about restriction. But that's nowhere found in this record. That's a discussion that doesn't make any sense here because Dr. Beshida didn't diagnose restriction, and he didn't say that restrictive lung diseases are what are primarily caused by coldest exposure. Dr. Beshida's opinion was given less weight because he was less qualified. That's not explained in this record. The administrative law judge recognized that Dr. Beshida was triple boarded, internal medicine, pulmonary disease, and in critical care medicine. He was also a NIOSH B reader of x-rays. And he doesn't explain why that showed that he had lesser qualifications than the Department of Labor physician or Dr. Begley or Dr. Wren. So that doesn't make sense. Isn't it fairly clear that the administrative law judge thinks, under the law as he sees it, that this gentleman is entitled to benefits? That's clear, isn't it? He awards benefits. That's clear. If the case were to go back to this ALJ, could the ALJ clarify his basis and his rulings and still award benefits? I don't think so because in this case . . . Do you think he thinks he can't or do you think you just . . . Because you don't think he should have awarded them in the first place. That is correct. I'm just asking, if he can meet and give us explanations and considerations and explain it a little bit more, you say it's impossible, legally impossible, for him to award benefits on this basis, on this record? Unlike many black lung cases, there's only four opinions here. Dr. Jaworski, the Department of Labor physician, really doesn't help us one way or the other. He says there's three possible causes. I don't know which it is. Smoking, coal dust, asthma. Dr. Begley, who saw Mr. Gillespie for the claimant, said, I think it's due to smoking. Dr. Beshida said, I think it's due to smoking. And Dr. Wren said, I think it's due to smoking. If the administrative law judge looks at those opinions to see if they establish that there is not a significant relationship between the COPD and coal dust exposure, which is the definition of legal pneumoconiosis, he will conclude that there is not a basis to award benefits because the presumed legal pneumoconiosis has been successfully rebutted. And I think when he goes back . . . So there's no basis in this record. I thought that he did make short shrift of some of the doctor's testimony, but he'd given a lot of deference. You're telling this court there's no basis on any of the testimony presented for the award of benefits? No basis for it? Or just this slim basis? When he goes back and corrects the mistakes he made, I don't think there is a basis. That's because Dr. Beshida doesn't talk about restriction. And that was the big bugaboo in discrediting Dr. Beshida's opinion. Dr. Wren talked about progression. And when emphysema is caused by coal dust exposure, it doesn't progress after 10 years of exposure. And that's really not an issue here because Mr. Golaski's breathing tests don't show us a progressive lung disease. They show a lung disease that progressed to some extent, but a month later got much better. We know that's not what pneumoconiosis does to coal miners. That's something else. So on that basis, when you go back and reconsider the opinions, the three physician opinions prove beyond a shadow of a doubt, by preponderance of evidence, there's not a significant relationship between this gentleman's COPD and his coal dust exposure. So, yes, I think that the administrative law judge will reverse the award of benefits and find the presumptions rebutted in this case. So on this record, there's not only a lack of substantial evidence or preponderance. There is no evidence, in your opinion. In my opinion, this is a case that could be reversed. That's something I've not had happen very often. But I think that this is one of those situations because Dr. Jaworski's opinion really doesn't matter, and the other three opinions conclude that COPD is not… Why doesn't Jaworski matter? Because he reaches three differential causes. He says it's either due to smoking, asthma, or coal dust, and I don't know which is causing the impairment. It's a very honest conclusion. I see my time is about up. I've saved some time for rebuttal. Thank you very much. Mr. Long. May it please the Court. My name is Heath Long, and I represent the Gilleskis. Your Honor, just to respond very quickly to something Mr. Mattingly said, this is a presumption case. The presumption was invoked, the 15-year presumption. So as I tell my clients, we hit the ball over the net. Our burden is done. The burden shifts over to Mr. Mattingly. He now has the burden to rule out any connection, and using your rule out as a legal standard. So all those doctors' opinions do matter. And, in fact, Dr. Jaworski attributes some of this to coal dust exposure. Boom, he's on our side for the presumption. Dr. Begley, and I'm glad you read that, that is from his deposition, and he answered a question that so did Dr. Bishita. In those depositions, because of the standard in the Fourth Circuit, I routinely ask that question, can you rule out any contribution from coal dust? Dr. Begley says, no, I can't. Dr. Bishita says, no, not 100%. Again, that burden that shifted over to Consol and the appellant has not come back at us again. It has not been rebutted. Last but not least is Dr. Wren. Now, Dr. Wren does not answer the question in that way, but Dr. Wren gives an opinion that post 10 years of coal dust exposure, emphysema does not progress. The judge, Administrative Judge Morgan, finds that that is against the spirit of the act and against the preamble, and I'll have- Emphysema does not progress. Ten years post coal dust exposure. Now pneumoconiosis. In here it would be legal pneumoconiosis, but Eppling, a case that this court decided recently, was affirmed because Dr. Hippenstiel, in a different case, made a statement very similar saying that pneumoconiosis and lung disease from coal dust only progresses up to 10 years. In the Eppling case, this court affirmed that that was against the act and, in fact, could be thrown out. So- Is there an understanding of what progressive means? I mean, does it mean that it progresses forever, or can you have a progressive disease function that progresses and then stops? That's just a question I'm asking. Sure. And they use it in this way. It can progress from non-disabling to disabling. That's really the crux of the matter. Does it progress from a minor inconvenience to now that it becomes impairing so much that you cannot perform your last coal mine? The doctor says it progresses for 10 years and stops. Does that mean it's not progressive? Because it seems to me that would be progressive. Maybe. The act says that it's latent and progressive. I know. Forever. Does it say forever? It doesn't say forever, but that's how it's been interpreted. Okay. That's what I'm asking you. Sure. It's not clear to me because I would just think, and I couldn't find the answer in this record, that progressive could be something other than an acute onset that ends, and then progressive would be, no, once you get this, it's going to get worse over the years. At some point, it will stop. It seems to me that, too, could be progressive compared to an acute disease. And, Your Honor, in every coal miner, it's a little bit different. Sometimes it never progresses. Sometimes it progresses to a point where they plateau. No, that's not what I'm asking. Okay. I'm asking, why isn't a disease progressive? Why is it inconsistent to say pneumoconiosis is progressive? Why is it inconsistent to say, I think his disease will progress to a certain point, and then it will stop, or it has stopped? Why does that make that diagnosis inconsistent with the act? It puts a ceiling on it. It puts an artificial ceiling on it. That's what makes it inconsistent. Because given the statute of limitations, with black lung filings, it can be 30 years post-exposure that someone files a black lung claim. No, but I'm not talking about, for statute of limitations purposes, and I don't want to belabor this too much, but I don't understand. I'm having a little trouble with this, and it may not matter in this case, but if a doctor's testimony is discounted because he said the disease only progressed for 10 years, why that is necessarily inconsistent with the statute that talks, or regulations that talk about a progressive disease. It doesn't strike me that they are necessarily inconsistent. And, again, Judge, I didn't mean to say that it somehow affects the statute of limitations. I just mean that given how the statute of limitations operates in black lung cases, you can file 50 years post-coal mine dust exposure. So the way the regulations are is that it is latent and progressive. It could pop up much later. No, no, no, no, no, but I don't want to belabor this too much more. Then I don't know that I have a better answer for you here. Here's the answer. The fact that it could pop up later doesn't answer the question of why a progression in a disease process that could go on for 10 or 20 years and then stop doesn't mean that's not a progressive disease to me. But somehow the administrative law judge thought that is necessarily inconsistent. Sure, and so did this court in Eppling. Yeah. Could be. Could be. Some minors, it's not at all. Right. And, Your Honor, I would like to give you a fuller definition of legal pneumoconiosis because I think it's important here. Any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to or substantially aggravated by dust exposure. So it does include a number of other diseases that may not be caused by coal dust exposure but are aggravated by coal dust exposure. And one of the questions that was asked of Mr. Mattingly prompted him to respond that, no, this, you know, if you go back and look at this, his breathing got a little bit better. That's not black lung. That's not dust exposure. That's not pneumoconiosis. Routinely in these cases, it's very rare we have a coal minor that doesn't smoke. So smoking, coal mine dust exposure may be a component of asthma. That's pretty regular that it's multifactorial. And a lot of times what doctors ignore or our doctors hopefully take into account is that given a multifactorial disease, some of it may be responsive to bronchodilators and medications and some of it may not be. So he may have a fixed component of obstruction or breathing disorder and a variable component. That doesn't mean it's not from coal dust. It just means that maybe part of it is not from coal dust and part of it is from coal dust. So I think that's an important part to note here, that routinely it is not that there is one cause for a breathing disorder. It's routine that there's multiple causes. Can I ask you a question about the asthma part of this? Because as I read the ALJ's opinion, it sounded as though he was saying that at least as to Wren and Besheba, part of the problem with their testimony was that they had not considered, although they did testify that the COPD or the emphysema was not caused, at least primarily, by coal dust. They hadn't considered whether the asthma that they diagnosed was aggravated by coal dust. And so my question is, if that's right, does all of this business about discrediting Wren, Drs. Wren and Besheba because of their views that are contrary to the act or the regulations, is that necessary to the ALJ's holding, in your view? You could take one away and the case still stands as it is. Yes. Okay. Absolutely. So contrary to the preamble, is it necessary for you to win? It is not. Because Attorney Mattingly's client, when the burden shifted, did not shift that burden back, did not rebut that burden. You heard the question that I asked. I asked the other side if we were to send this back. Sure. Couldn't he just clarify his decision, add something to it, to still award benefits? You heard their answer. No. Legally, it cannot be done. Your answer to that is, I think part of this, that he's entitled to the presumption so you win unless, and they have to produce the unless. Yes. Absolutely. Is that it? That is. If you have no further questions, Your Honor. Thank you very much. Thank you. Thank you. Okay. Mr. Mattingly. In the Bender decision, page 141, the rule-out standard applies only when a miner has worked for 15 years or more, he suffers from a totally disabling impairment, and the operator cannot satisfy the first method of rebuttal. You don't use the rule-out standard for the first method of rebuttal, which is to determine whether or not clinical and legal pneumoconiosis is present. I direct the Court's attention to National Mining Association, the 2002 D.C. Circuit Court opinion. It deals with progression. The Department of Labor agreed with the Circuit Court that it's a rare conditioning, and, Judge Shedd, I think you're right. If it progresses for a while, that's a progressive disease, the fact that it stops progressing. No, no, no, no. I wasn't suggesting that I was right. I was asking a question about that. Then I'll suggest you're right. Yeah, okay. Okay. That is a progressive disease. But that isn't what Mr. Goluski has. The breathing tests show that his function gets remarkably better, not only in the breathing test, but also the diffusion studies. Can I ask you a question about this? Sure. Does it matter whether that's what he had? I thought the gist of this principle is that if a doctor gets up and testifies, let's just assume for a minute, I don't think it's progressive at all. It's just not a progressive disease. That doctor's testimony can be discounted, whether or not it was progressive in the case of the particular minor in question. The point is that this doctor is sort of not on board with the act, and for that reason we discount the testimony. I guess I'm not understanding why it matters whether this particular minor was manifesting a progressive disease. Hostility to the act started years ago when doctors would testify that pneumoconiosis was never disabling. It has morphed into this large trap for doctors. If they say anything that seemingly would fall contrary to any part of the act, then they're called hostile. So I disagree with the proposition. I guess I was asking you as a hypothetical. I'm trying to imagine a situation where there is clear hostility to the act. In those cases, we discount the testimony whether or not there's some link to the particular minor in front of us. Correct. In hostility to the act, as this Court has recognized, and it came out of the Tenth Circuit years ago, is when a doctor says pneumoconiosis can never be disabling. You throw those opinions out. I take it your point would be if a doctor testifies that it's progressive for 10 years and stops and points to some medical journal, that doesn't indicate hostility to the act necessarily. Correct. It just may be he's saying what the current information is, and to discount that as hostility to the act, when there could be hostility to the act, when he goes, I don't care what any federal bureaucrat says, that ain't so. I mean, that'd be hostility to the act. That would be hostile. But that's a line between what's hostile to the act and a doctor's opinion based on some medical materials, journals, when in fact part of that doctor's opinion is a progression of the disease process. Correct. I take it that's what I was asking about at that point. The question of aggravation, I think, was addressed both by Dr. Bushida and Dr. Wren. If you look at the joint appendix and their depositions at 169 and 236, both say no part of this man's work in the minds has caused his disease. So I think that includes causation, aggravation, or any other permutation that would call into effect a question of legal pneumoconiosis. And finally, this is yet another case where I'm kind of dancing around the ghost of the preamble. Administrative law judges are citing the preamble for a whole bunch of things. The preamble stands for one thing, and the Department of Labor clearly told us that in the opening paragraphs. COPD can be caused by coal dust exposure. They cited a bunch of medical articles and discussed the science that supported it. That's not part of the preamble's purpose or the regulations. The preamble needs to be restricted to only that point. COPD can be caused by coal dust exposure. It's not necessarily caused by coal dust exposure in all minors. Thank you. Thank you very much. We will adjourn court, step down, greet counsel. Thank you.
judges: Dennis W. Shedd, Stephanie D. Thacker, Pamela A. Harris